No. 45,673

RURAL GAS, INC. *Appellant,* v. ALVIN SHEPEK, THE MUNDEN STATE
BANK, and NORTH CENTRAL KANSAS PRODUCTION CREDIT ASSO-
CIATION, *Appellees.*

(469 P. 2d 341)

Opinion filed May 9, 1970.

*Nelson J. Ward,* of Belleville, was on the brief for Rural Gas, Inc., Appellant.

*Thomas J. Pitner,* of the firm of Baldwin, Paulsen, Buechel & Pitner, of
Concordia, argued the cause and was on the brief for North Central Kansas
Production Credit Association, appellee.

*Fred Swoyer,* of Belleville, was on the brief for Alvin Shepek, defendant.

*Frank G. Spurney,* of Belleville, was on the brief for Munden State Bank,
garnishee.

The opinion of the court was delivered by

PRICE, C. J.: This appeal arises out of a garnishment proceeding
and involves the determination of priorities between judgment
creditors of defendant Shepek as to a sum of money in the hands of
the clerk of a public sale of defendant's property.

Defendant, Alvin Shepek, hereafter referred to as defendant, was
indebted to the North Central Kansas Production Credit Associa-
tion, hereafter referred to as Production. The indebtedness was
secured by two security agreements [K. S. A. 1969 Supp. 84-9-105
(h)] dated July 20, 1967, and March 20, 1968, executed and per-
fected under the uniform commercial code, and which covered farm
machinery, livestock, crops and other personal property. The se-
curity agreements provided that upon default Production could (1)
enter upon the property of defendant to take possession of the
property and sell the same at public or private sale on the premises

or elsewhere; (2) foreclose the security interests by any available procedure and apply the proceeds to the payment of the debt; and (3) that if there remained any of the debt still owing, defendant would be liable for the deficiency.

Defendant became in default, and Production filed suit—setting up the security agreements, promissory notes, and the facts of default. Defendant failed to answer, and Production, after written notice, obtained a default judgment on August 19, 1968, in the amount of $43,334.02, including $5,000.00 punitive damages for the conversion of collateral. This judgment did not formally foreclose the security interests against defendant, but amounted to a general judgment lien on all of his property. A general execution was issued on September 16, 1968.

Not wanting to force defendant out of the farming business unless absolutely necessary, Production cooperated with the levying officers and defendant in trying to arrange other financing to pay off the judgment. Because of this, actual levy of execution on defendant's property was delayed. Refinancing efforts were in vain, however, and Production had no alternative than to apply the proceeds from a sale of the property to the judgment.

It was mutually agreed by all parties that the best price could be obtained at a public auction at which defendant himself would sell his property rather than at a sheriff's sale under the levy of execution. It also was agreed the best place to hold the sale was on defendant's farm. Accordingly, the sale was arranged for November 8, 1968. Production hired the auctioneers and also the Munden State Bank—hereafter referred to as the bank—to clerk the sale.

At 11:00 o'clock on the morning of the sale, Production and defendant entered into a written agreement providing for the sale and for the assignment of the sale proceeds to Production to be applied on its judgment against defendant. The agreement also contained directions to the bank, as clerk—and which also signed the agreement—for the collection and distribution of the proceeds—for the protection of the parties concerned.

The sale proceeded from 11:30 A. M. until approximately 5:00 o'clock in the afternoon.

In order to pick up the story of events we now go back several months. Between May 20 and June 16, 1968, Rural Gas, Inc.—plaintiff in this act, and hereafter referred to as Rural—sold machinery and other property to defendant Shepek in the amount of

$822.16. No security interest was perfected in connection with those sales. Defendant defaulted in payment.

On the morning of November 8, 1968—the day of the sale heretofore referred to—Rural brought suit against defendant to recover the amount in question—$822.16. An order of garnishment was issued to the bank as to any funds in its hands owed to defendant. The order of garnishment was received by the sheriff at 10:30 that morning and served on the bank at 2:00 o'clock that afternoon—while the sale was in progress—and subsequent to the execution by defendant of the written assignment of the sale proceeds to Production.

As stated—the sale proceeded to completion—and the total proceeds of it were $20,357.28. Also, as stated, Production's judgment of August 19, 1968, against defendant—was $43,334.02.

On November 15, 1968, the bank, as garnishee in Rural's action against defendant Shepek—filed its answer stating that as of November 8, 1968, and continuing to the present—it had no funds in its hands or under its control owing to defendant, and that it was in no way liable as garnishee.

On November 22, 1968, Rural filed its reply to the bank's answer, alleging that on November 8, 1968, and since, the bank had in its possession funds owed to defendant.

The general execution of September 16, 1968, was returned by the sheriff on November 20, 1968—"No goods found—Unsatisfied."

On December 30, 1968, Rural, Production, defendant, and the bank, entered into a written stipulation by the terms of which the bank was to deposit with the clerk of the district court the sum of $1,000.00 of the sale proceeds; the balance was to be paid over to Production in accordance with the written assignment agreement of November 8, 1968; Rural waived its rights to all of the sale proceeds except the sum of $1,000.00 so deposited with the court; the bank, as garnishee, was released from all further liability and the garnishment was dissolved, and Production was allowed to intervene in Rural's action against defendant so as to protect its rights in the $1,000.00 on deposit. Defendant elected to take no part in the proceedings.

On December 30, 1968, in the instant action, judgment was rendered for Rural against defendant in the amount of $848.86. The court also approved the stipulation among the parties and took under advisement the dispute between Rural and Production as to the disposition of the $1,000.00 on deposit.

On January 28, 1969, the court entered judgment that Production was entitled to the $1,000.00 in question.

Various motions to set aside the court's findings and for a new trial—being overruled—Rural has appealed—and, in essence, contends that Production, by taking judgment on August 19, 1968, waived its lien on the property covered by the security agreements; that the written agreement to sell the property entered into by defendant and Production on November 8, 1968, was a "security agreement" and, as it was not filed according to law, therefore Rural's garnishment order takes precedence over Production's lien.

We believe there are at least two valid reasons why the judgment should be upheld.

If, as to the specific point in issue—it is considered that provisions of the uniform commercial code control—K. S. A. 84-9-501 provides that when a debtor is in default under a security agreement a secured party may reduce his claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure; that the parties may by agreement determine the standards by which the fulfillment of the rights and duties is to be measured if such standards are not manifestly unreasonable, and that when a secured party has reduced his claim to judgment the lien of any levy which may be made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral.

Here, Production's security agreements were executed and perfected in July 1967 and March 1968, long prior to defendant's indebtedness to Rural. Production obtained its judgment on August 19, 1968. A general execution on the judgment was issued on September 16, 1968. Rural's order of garnishment was not served on the bank until after the written assignment agreement of November 8, 1968 was executed by defendant and Production.

Application of the provisions of the statute to the facts of this case is obvious, and the result reached by the trial court was correct.

Entirely aside from any provision of the uniform commercial code, it is clear that the assignment agreement of November 8, 1968, simply was an assignment by defendant to Production—his judgment creditor—of the proceeds of the sale. The parties had a perfect right to enter into such an arrangment. The bank was merely acting as clerk of the sale. At least up to the amount of Production's judgment—defendant had no interest in the proceeds.

The bank's duty was to disburse those proceeds under the terms of the agreement. It had in its hands and under its control no funds owed to defendant. Funds in its hands—as clerk—were owed to Production—not defendant. It follows that the bank had no liability as garnishee, and the trial court was correct in ruling that Production was entitled to the $1,000.00 paid into court under the stipulation of December 30, 1968.

The judgment is affirmed.